UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-23773-CV-LENARD/TURNOFF

GUSTAVO PERERA,

    Plaintiff,

vs.

WACHOVIA BANK, N.A.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Wachovia, N.A.'s ("Wachovia") Motion to Dismiss Plaintiff's Complaint **[D.E. 6]**, and an Order of Referral entered by the Honorable Joan A. Lenard on January 20, 2010 **[D.E. 20]**. A hearing on the Motion **[D.E. 6]** took place before the undersigned on Monday, March 8, 2010.

Upon review of the Motion **[D.E. 6]**, the Response **[D.E. 18]**, the Reply **[D.E. 19]**, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### I. Background

This action was filed by Plaintiff, Dr. Gustavo Perera ("Perera") against Wachovia, alleging among other things, Civil Theft and Conversion. The case was originally filed in the 11th Judicial Circuit in and for Miami-Dade County, Florida, but was subsequently removed to this Court on December 18, 2009. **[D.E. 1]**. Perera is seeking restitution and damages. **[D.E. 1]**.

The Complaint alleges that Perera, a Venezuelan national, opened several certificates of deposit (CDs) at Wachovia and its predecessors throughout the course of a thirty (30) year banking

relationship. Compl. at ¶ 7 [**D.E. 1**]. Osmara Fonseca ("Fonseca"), a then Assistant Vice President for International Banking at Wachovia, served as one of Perera's account representatives. Perera claims that during the course of the banking relationship, Wachovia, through Fonseca and others, led him to believe that his funds were secure. Id. at ¶ 8.

According to Perera, sometime in August 2008, he was contacted by the Federal Bureau of Investigation ("FBI") and was notified that $187,871.10 of his funds had been stolen by Fonseca. Id. at ¶ 8. Perera claims that Fonseca stole the funds in question around February 2001 by, among other things, forging or otherwise falsifying checks made payable to third parties. Id. at ¶ 10. Perera also claims that Wachovia learned of the scheme sometime in 2005, but never advised him of the theft. Id. at ¶ 12.

## **II. Related Criminal Action**

The Court's docket reveals that there is a related criminal case[1] currently pending before Judge Lenard. Specifically, Fonseca was recently charged by way of Information on January 29, 2010. See USA v. Fonseca, Case No: 10-CR-20055-JAL. [**D.E. 1**]. She was arraigned on that same date, pleaded not guilty, and is currently out on a $100,000 personal surety bond. Id. at [**D.E. 3, 7**].

## **III. Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. It does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). In this

---

[1]This information is noted for background purposes only, and has not been considered by the undersigned for purposes of the instant Motion.

regard, the Court must construe the complaint in the light most favorable to the plaintiff, accepting the factual allegations as true. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). Such a motion should only be granted when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also South Florida Water Management District v. Montalvo, 84 F.3d 402, 406 (11th Cir. 1996).

In reviewing the motion, the Court "may only examine the four corners of the complaint and not matters outside the complaint without converting the motion to dismiss to a motion for summary judgment." Caravello v. American Airlines, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (Altonaga, J.); see also, St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

### IV. Analysis

In its Motion **[D.E. 6]**, Wachovia contends that Perera's claims are barred by the statute of limitations, and are otherwise subject to dismissal for failure to properly state a cause of action. **[D.E. 6]**. Each argument shall be addressed in turn.

#### A. Statute of Limitations

Wachovia contends that all of Perera's claims are time barred. In this connection, Wachovia argues that the civil theft claim is barred by Fla. Stat. § 772.17 - which prescribes a five (5) year statute of limitations. Wachovia further argues that the remaining claims are barred by Fla. Stat. § 95.11(3)(a) – which prescribes a four (4) year statute of limitations for actions founded on negligence, conversion, and restitution. Specifically, Wachovia claims that the action is time-barred because the alleged theft took place in February 2001, but this action was not filed until November

18, 2009.

Defendant correctly notes that the "delayed discovery" doctrine does not apply to the types of claims asserted by Perera. In Davis v. Monahan, 832 So. 2d 708, 712 (Fla. 2002), the Florida Supreme Court explained that the delayed discovery exception applies solely in the following circumstances,

> The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs. An exception is made for claims of fraud and products liability in which the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred. The Legislature has also imposed a delayed discovery rule in cases of professional malpractice, medical malpractice and intentional torts based on abuse.

Monahan, 832 So. 2d at 709-710.

Plaintiff, on the other hand, argues that the continuing torts doctrine and/or the equitable tolling doctrine provide an exception to the statute of limitations. The Court will first address the former.

### 1. Continuing Torts Doctrine

Florida recognizes an exception to the general statute of limitations for torts that are continuing in nature. Laney v. American Equity Investment Life Ins. Co., 243 F. Supp. 2d 1347 (M.D. Fla. 2003). Under this doctrine, the statute of limitations runs from the date that the tortious conduct ceases. Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. 2d DCA 1994).

Here, accepting, as we must, the allegations in the Complaint as true, the relevant events are as follows. Fonseca stole funds from Perera's account(s) in February 2001. Compl. at ¶ 9 **[D.E. 1]**. Wachovia learned of the theft in 2005. Id. at ¶11 Sometime in 2006, Wachovia replaced Fonseca as Perera's account representative and led Plaintiff to believe that the replacement of Fonseca was

a normal event and not unusual. Id. at ¶12. John Romanach, a financial advisor in Wachovia's International Private Banking division was assigned as Perera's new account representative. Id. At some point during the relevant time period, Wachovia, on its own and not at the request of Plaintiff, reorganized and restructured many of Perera's accounts and certificates of deposit, further adding to Perera's confusion as to the funds he had on deposit. Id. at ¶ 13. Perera learned of the theft and related events in 2008, not from Wachovia, but from federal authorities. Id. at ¶ 16. Specifically, Perera was contacted by an FBI agent assigned to the U.S. Embassy in Venezuela on August 4, 2008, who advised him that Fonseca had stolen funds totaling $184,871.10 from one of his certificates of deposit. Id.

Upon learning of the theft, Perera contacted Romanach and questioned him. Romanach acknowledged that the theft had occurred, and noted that "it was very unfortunate, but that it was a long time ago and he thought Wachovia had resolved the issue with its customers." Id. at ¶16. On August 8, 2008, Perera met with federal authorities and Virgie Palenzuela, an Assistant Vice President and Senior Fraud Investigator at Wachovia in Miami. Id. at ¶¶17-18. During the meeting, Wachovia personnel apologized for the theft and advised Perera "not to worry about his money that the Bank would be responsible for returning the money." Id. at ¶ 18. Wachovia personnel repeated those assurances on several occasions over the following year and continually apologized for the delay in returning Perera's funds. Id. at ¶ 19.

On December 8, 2008, Palenzuela sent an email to the FBI and copied Perera. In the email, Palenzuela asked federal authorities whether they had corrected "certain information" so that the bank could proceed with their efforts to return the funds. Id. at ¶ 20. On July 23, 2009, Perera was advised by Wachovia personnel that "the Bank was looking for a way [to not] return [Perera's]

money." Id. at 22. On August 24, 2009, Wachovia's Senior Vice President in charge of security advised Perera in writing that the bank was denying his request for reimbursement of the $184,871.10. Id. at ¶ 23. This action followed on December 18, 2009. **[D.E. 1]**.

The allegations in the Complaint suggest that this was not a "one time event." Quite the contrary, the allegations suggest continuous wrongdoing on the part of Wachovia during various times after the theft by Fonseca. Here, Perera argues that Wachovia's wrongful conduct did not end until he was notified of the theft by the authorities. The undersigned agrees.

Florida courts interpreting these issues have explained that a continuing tort is established by continual tortious acts. Suarez v. City of Tampa, 987 So. 2d 681 (Fla. 2nd DCA 2008). By way of example, Florida courts have addressed these issues in the context of cases involving "churning" and have found that the continuing torts doctrine *could* apply to same. Laney v. American Equity Investiment Life Ins. Co., 243 F. Supp. 2d 1347 (M.D. Fla. 2003). "Churning" or "twisting" are securities concepts by which investments are purchased by a broker (or on the advice of a broker), quickly sold, and then other investments are purchased to generate commission for the broker to the detriment of the investor. Id. at 1351.

In Laney, the plaintiffs made a series of investment transactions (variable and fixed annuities) between 1994-98 with the assistance of Richard W. Desimone, an investment broker. A few years later, Plaintiffs sued Desimone, his employers and the insurance company that issued the annuities, claiming, *inter alia*, churning, twisting and more specifically, breach of fiduciary duty, negligent misrepresentations and omissions of material facts and fraud. Id. Refusing to apply the statute of limitations, the Laney Court found that the factual question of whether such conduct constituted a "continuing tort" precluded summary judgment. Id.

In so doing, the Court noted that sister courts have found churning type scenarios to be a "unified offense" because its nature requires a "hindsight analysis of the entire history of a broker's management of an account and his pattern of trading." Id. at 1357(citing Miley v. Oppenheimer & Co., Inc., 637 F. 2d 318, 327 (5th Cir. 1981). The same can be said about Wachovia's management of Perera's account from 2001-2006.

Consistent with the above and foregoing, the undersigned finds that the continuing tort doctrine applies herein, and thus **RESPECTFULLY RECOMMENDS** application of same.

### 2. Equitable Tolling

Having determined that the continuing tort doctrine applies – barring the application of the statute of limitations – the Court need not reach the issue of equitable tolling. However, in order to make a more complete record, the court shall briefly address same.

Equitable tolling accommodates both a defendant's right not to be called upon to defend a stale claim, and plaintiff's rights to assert a meritorious claim when equitable circumstances have prevented a timely filing. See Pompano Helicopters, Inc. v. Westwood One, Inc., 2009 WL 1515276 (S.D. Fla.)(citing Machules v. Dept. of Admin., 523 So. 2d 1132, 1134 (Fla. 1988)). Active deception or misconduct on the part of the defendants is not required. Rather, the concept is typically applied when a plaintiff has been mislead or lulled into inaction, and/or has been prevented from asserting his rights. Machules, 523 So. 2d at 1134.

Here, as noted *supra*, Perera alleges that "from 2001 and continuing until August 4, 2008, Plaintiff continued to believe and Wachovia never advised otherwise - despite their knowledge to the contrary – that all his funds, including those previously stolen by Wachovia Assistant Vice President Fonseca, were safe and secure within his accounts at Wachovia." Compl. at ¶ 14 [D.E.

1]. He claims that Wachovia did not notify him of the theft when they learned of it in 2005. Id. at ¶1. He also claims that Wachovia failed to notify him that Romanach was assigned to replace Fonseca in 2006, because of the theft. Id. In fact, according to Perera, he did not know that Wachovia was denying his request for reimbursement until August 24, 2009. Id. at ¶ 23. Prior to that, Perera alleges that he was strung along and led to believe that the matter would be resolved.

Consistent with the above and foregoing and the applicable law, the undersigned finds that equitable circumstances prevented Perera from filing this action earlier. Accordingly, it is therefore **RESPECTFULLY RECOMMENDED** that equitable tolling be applied and that Wachovia's Motion be **DENIED** accordingly.

In sum, the Court further notes that the exact timing of certain events cannot properly be determined from the four corners of the complaint alone. Given the court's limited review on a Rule 12 motion to dismiss, a dismissal based upon statute of limitations would be inappropriate at this time.

**B. Failure to State a Cause of Action**

*Civil Theft and Conversion - Counts I and II*

Defendant argues that Plaintiff cannot properly assert a claim for civil theft or conversion, because a CD– such as the one at issue here – is merely an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the money. See Fla. Stat. § 673.1041(10). In this connection, Defendant cites Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008) for the proposition that a simple debt which can be discharged by the payment of money cannot generally form the basis for a claim of conversion or civil theft. This argument does not persuade.

First, Florida courts do in fact recognize civil theft as a cause of action in cases dealing with misappropriation of funds in certificates of deposit or "CDs." See e.g., Escudero v. Hasbun, 689 So. 2d 1144 (Fla. 3d DCA 1997). Second, the facts of Gasparini are distinguishable from those in the matter at hand. The funds at issue in that case related to a letter of credit that was issued to finance the purchase of a restaurant – not funds deposited in a financial institution. Id. Further, the Gasparini court explained that its holding should not be meant to say that "there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." Id. (citing Ginsburg v. Lennar Fla. Holdings, Inc., 645 so.2d 490, 495 (Fla. 3d DCA 1994). The Court specifically noted that in order for money to be the object of conversion "there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." Futch v. Head, 511 So. 2d 314, 320 (Fla. 1 DCA 1987)(citing Belford Trucking v. Zagar, 243 So. 2d 646 (Fla. 4th DCA 1970)). According to Wachovia, no such duty exists herein. The undersigned disagrees.

Further, as correctly noted by Perera, money in a bank account can properly be the subject of conversion when the account and amount are separate and ascertainable. Allen v. Gordon, 429 So. 2d 369, 371 (Fla. 1 DCA 1983)(money in question was specific and identifiable where the defendant had withdrawn balances of a joint savings account and a certificate of deposit). In Allen, the Court found that in such instances the conversion takes place, not while in the accounts, but upon the taking of the money from the accounts. Id. In other words, the act of withdrawing the money by Defendant constitutes the exercising of wrongful dominion and control to the detriment of the Plaintiff.

As a general matter, in order to state a claim for civil theft under Florida law, a plaintiff must allege an injury resulting from a violation under the criminal theft statute – Fla. Stat. §812.014. See Compl. at ¶28. **[D.E. 1]**. The complaint must allege that Defendant (1) knowingly, (2) obtained or used, or endeavored to obtain or use, Plaintiff's property with (3) felonious intent (4) either temporarily or permanently to: (a) deprive Plaintiff of its right to or a benefit from the property or (b) appropriate the property to is own use, or to the use of any person not entitled to the property. See, United Technologies Corp. v. Mazer, 556 F. 3d 1260 (11th Cir. 2009); see also, Sadarangani v. Bank of America, N.A., 2009 WL 2175631 (S.D.Fla.).

In order to properly state a claim for conversion, one must allege an "act of dominion wrongfully asserted over another person's property inconsistent with his ownership therein." Mazer, 556 F. 3d at 1270 (citing, Thomas v. Hertz Corp., 890 So. 2d 488, 449 (Fla. 3d DCA 2004). Here, Perera has pleaded properly as to both civil theft and conversion.

The factual background in the Complaint – which is incorporated by reference into Counts I & II– and the actual allegations contained in Counts I & II are plead sufficiently to withstand a motion to dismiss. Compl. at ¶¶ 7-40. For example, as to Count I, Perera alleges,

> 28. Wachovia's employee with knowing and felonious intent obtained property in the form of money stolen from specifically identifiable accounts of Plaintiff with Wachovia with the intent to deprive Plaintiff of the right to the property or a benefit derived therefrom and to appropriate the property for her own use or for the use of another person not entitled thereto in violation of Fla. Stat. § 812.014(1) *et seq.*

Compl. at ¶ 28.

As to Count II, Perera alleges,

> 35. At all times relevant to this action, Wachovia held in its possession, care, custody and control monies belonging to Plaintiff.

10

> 36. On or about February 2001, Wachovia thought its employee converted to its/their use $184,871.10 that was then the property of Plaintiff from specifically identifiable accounts belonging to Plaintiff.

Compl. at ¶¶ 35, 36.

Consistent with the above and foregoing and the applicable law, the undersigned finds that Perera has sufficiently plead as to Counts I & II so as to survive a motion to dismiss. Therefore, it is **RESPECTFULLY RECOMMENDED** that Wachovia's Motion be **DENIED** as to Counts I & II.

*Restitution (Money Had and Received) - Count III*

Defendant argues that Count III - claim for restitution – must be dismissed because Perera has not alleged that Wachovia has stolen funds in its possession. According to Defendant, Perera has only alleged that Fonseca, not Wachovia, stole his funds. On these same grounds, Wachovia also claims that Perera's request for the imposition of a constructive trust and an equitable lien likewise fail.

*1. Restitution*

The parties agree that in order to properly plead a claim for restitution, Perera must establish circumstances that would "show that an injustice would occur if money were not refunded." Moore Handley, Inc. v. Major Realty Corp., 340 So. 2d 1238 (1239 (Fla. 4th DCA 1976). There is no doubt in this Court's mind that injustice would occur if this account holder is not repaid.

However, Wachovia urges that the claim must fail because Perera cannot allege that the funds are in Wachovia's possession. In support of this argument, Defendant cites to Love v. Brown Development Co. of Michigan, 131 So. 144, 147 (Fla. 1930). The general proposition espoused in the 1930 case of Love is that "an action for money had and received * * * *may* in general, be

11

maintained whenever one has money in his hands belonging to another, which in equity and good conscious, he ought to pay over to that other." Id. at 147 (emphasis added).

First, the facts of Love are not parallel to those in the instant case. Love dealt with a sales contract for the purchase of certain property in Alachua County, Florida. To simplify, the issue was whether a check – received in error and subsequently cashed – constituted the ratification of the sales agreement. Id. Completely different allegations are at issue here. Second, Love did not limit recovery to cases where money *is* currently in the hands of the defendant.

Here, Perera has properly plead that the funds were stolen by a Wachovia employee, while in Wachovia's possession. See Compl. ¶ 43-45. Consistent with the above and foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Wachovia's Motion be **DENIED** as to Count III.

This finding does not mean that Perera will ultimately prevail as a matter of law on this or any other issue. It simply means that for present purposes said allegation, read in connection with other allegations in the Complaint are enough to comply with Fed.R.Civ.P. 8's liberal pleading requirements and the standard for dismissal under Rule 12.

2. *Constructive Trust & Equitable Lien*

As noted above, Wachovia argues that Plaintiff has not specifically "alleged all the necessary elements for the imposition of a constructive trust." The undersigned agrees. Perera's request for a constructive trust is merely thrown into the "wherefore" clause of Count III. Wachovia correctly notes that Perera must specifically allege: (1) a promise, express or implied; (2) transfer of property or reliance thereon; (3) a confidential relationship; and (4) unjust enrichment. See Abele v. Sawyer, 750 So. 2d 70, 74 (Fla. 4th DCA 1999).

12

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that Perera's request for constructive trust be **STRICKEN** and/or **DISMISSED** *without prejudice.*

Perera's request for the imposition of an equitable lien is likewise tossed into the "wherefore" clause of Count III. For the same reasons, it is likewise **RESPECTFULLY RECOMMENDED** that Perera's request for the imposition of an equitable lien be **STRICKEN** and/or **DISMISSED** *without prejudice.*

*Negligent Supervision - Count IV*

Wachovia also agues that Perera has failed to state a claim as to negligent supervision. Wachovia specifically claims that Perera must allege that Wachovia knew or should have known of the necessity and opportunity to exercise control over a particular employee. In other words, Wachovia contends that Perera must allege that it knew or should have known that Fonseca was predisposed to committing theft under circumstances that create an opportunity to commit theft.

In order to prove negligent supervision, a plaintiff must demonstrate: (1) the existence of a relationship giving rise to a legal duty to supervise, (2) the negligent breach of that duty, and (3) that the negligence was the proximate cause of plaintiff's injuries. Nationwide Mut. Co. of Ft. Myers v. Total Rehab. Center, Inc., 657 F.Supp. 1279, 1292 (M.D. Fla. 2009) (citing Collins v. Sch. Bd. of Broward County, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)). Here, Perera alleges that he had a banking relationship with Wachovia and that Wachovia had a duty to supervise its employees. Compl. at ¶ 47. [D.E. 1]. Perera also alleges that Wachovia was negligent in the supervision of Fonseca. Id. at ¶ 48. Perera further alleges that "[he] suffered [an] injury that was the proximate cause of Wachovia's failure to supervise its employee. . ." Id. at ¶ 51. These allegations, coupled with others in the Complaint that have been incorporated by reference, are sufficiently plead so as

to withstand a motion to dismiss.

Consistent with the above and foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Wachovia's Motion be **DENIED** as to Count IV.

### V. Conclusion

Consistent with the above findings, it is **RESPECTFULLY RECOMMENDED** that Wachovia's Motion to Dismiss **[D.E. 6]** be **GRANTED-IN-PART AND DENIED-IN-PART** consistent with the findings noted *supra*.

Pursuant to 28 U.S.C. § 636(b)(1)( c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Court, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, reh'g denied, 7 F. 3d 242 (11th Cir. 1993) (*en banc*); LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida this 15th day of March 2010.

_____
WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Joan A. Lenard
    Counsel of Record